Thank you very much, Your Honor, and may it please the Court, my name is Michael Pollard, and along with my colleagues, James Baker and Emily Garcia-Yo, I represent the Trustees of the Local 38 Fund, the appellants in this case. I'd like to reserve two minutes of time. Okay, I'm sorry, just watch the clock. Thank you, Your Honor. This case comes before the Court on a dismissal, basically on an issue raised to a sponte by the District Court, remanding this ERISA declaratory judgment action back to arbitration. There are three points that I would like to make in my opening argument that I think may help the Court perceive how the District Court heard on this matter. The first is that this was not a gate, this was a gateway matter. This was not a request for mid-arbitration intervention. We'll talk about that in a minute. Second, Counsel, one of the problems that we get into is jurisdiction. What is the basis for our Court's jurisdiction here, or for that matter, the District Court's jurisdiction? Well, the District Court's jurisdiction, this is an ERISA case brought under Section 502A3. The plaintiffs in this case are the Trustees of Local 38. What is at issue in this case are monies received from employers who subscribe to the Local 38 Fund. But you only get into federal court if ERISA preempts this kind of claim. Well, if you can state a cause of it, no, you can have federal question jurisdiction under Section 502A3, which is what happens. And really, what this case was about was about adjudicating what would, in a civil case, be the preemption of affirmative defense, but it was brought as a declaratory judgment action because the parties to this permissive arbitration agreement agreed that that's how it would be brought. That's how the arbitrator brought it. It is an ERISA claim because the plaintiffs are fund trustees. They receive money from Local 38 employers that originates from two different obligations. Number one, there is an obligation under the Pension Protection Act to pay funds to Local 38 to shore up the actuarial basis. With respect to this, we don't have a lot of time. I get it. I'm interested to know, basically, why the arbitrator didn't have the whole thing here. I know you say there's a precondition. The arbitrator said that was satisfied. In any event, you went through with the arbitration. So on either basis, why do you have any grounds to complain about the arbitrator's role in this matter? First of all, with respect to the front end of this, I will tell you that if the court looks at page 160 of the excerpt from the record, that is the stipulations and order of the arbitrator. He finds in paragraphs 1 through 3 that a dispute exists and that he has been appointed to resolve that claim. Like at ER 135, he says that the preconditions are the top step. The preconditions are the meetings with the reciprocity coordinator, the efforts to mutually resolve it that way. Those are the preconditions he's referring to. But if I may also just continue, that is with respect to the dispute referenced in paragraphs 1 through 4. Paragraph 5 on page 160 references another dispute, and that is the ERISA dispute. And he does not say he has been selected as the arbitrator for that. But you went forward with the arbitration as to the whole matter, did you not? We did. We had no choice because we were remanded to arbitration. And so I imagine the court is considering why is this not moot. Well, it's not moot because what we wanted, and I want you to understand this for a second, Judge. This is not the only instance where this issue comes up. There are other funds. As a fiduciary of a plan, I can tell you I'm a fiduciary of my own firm's plan, and you're faced with this. What do you do with these Pension Protection Act payments that ERISA compels you not to use to pay current or future benefits? You're in a rock-and-hard place. If you follow an agreement and remit them, your own participants can sue you. All true, but the reality is the two unions here entered into an agreement, and the agreement contained an arbitration agreement, an exceptionally broad arbitration agreement. You didn't have to do that, but you did. Actually, it's not an exceptionally broad. It's actually, first of all, it's permissive. I read that way. Well, let me try and dispel the ewe of that notion because it is not exceptionally broad. The arbitration agreement does not say any and all disputes arising in connection with this agreement. It says any dispute arising from this agreement. It's actually much narrower than the one cited in the case's counsel document. It's a magic word. Oh, arising from is very different than arising in connection with. And so does a dispute about pension plan amendment provisions, which ERISA is very specific about because it tries to help, tries to require or mandate these for underfunded plans, does it arise under the PPA or does it arise under this agreement? It arises under the PPA, which is why the court found two separate disputes here. Does the agreement refer to the concepts that are covered by ERISA? Another great question. It does not because the reciprocal agreement was signed years before the Pension Protection Act was even passed. ERISA was passed in what time? 1974. 1974, but the Pension Protection Act was passed, I forget the year, but it's after the reciprocity agreement in this case was entered into. So, no, the reciprocal agreement could not have contemplated the PPA agreements. And you don't view the PPA as an amendment to ERISA? It is, but it's an obligation that never existed at the time this reciprocal agreement was entered into. Okay, but I think that's what I'm struggling with, Counselor. You seem to be saying that when the agreement says arising from the agreement is different. That's the error word. You know, if it's in the agreement and it arises from the agreement, then I would think that a common-sense reading would suggest that anything that's covered in the agreement would be included in the arbitration. Why is that wrong? Because I think, hey, it arises from the PPA. P is any dispute, and the Court here found two separate disputes. And 3, what predicates arbitration versus court is agreement. And the stipulation and order found with respect to the second dispute agreements that we would file this case in federal court. And, in fact, the defendants didn't act differently. They chose the vehicle of a motion for lack of subject matter jurisdiction to challenge whether there was an ERISA claim or not. The district court said? No, the district court didn't say that. The district court said, I want supplemental briefing. The parties have five pages to discuss three issues. One of them is whether the FAA trumps this case and kicks it back to arbitration. Judge Gould, if I could interject a quick question. Is there any place in the record where on the arbitration you said, we're doing this under protest, we don't accept jurisdiction here? We arbitrated the case over objection, yes, Your Honor. And that's in the record in the other appeal that is part of this, which is now before the court for oral argument. That's the appeal from that arbitration. I'll hear about it in a few minutes. Yes, I'll reserve the rest for you. You may do so. We'll hear from the other side. The other trustees. Good morning, Your Honor. My name is Louis Malone, and I represent the trustees of the Plumbers and Pipefitters National Pension Fund. To address the first question raised by this court, subject matter jurisdiction, there was no subject matter jurisdiction in front of the district court. This was a declaratory judgment action. And as the court is well aware, a declaratory judgment act does not confer jurisdiction. You have to have underlying federal jurisdiction. They selected ERISA section 502A3 as their jurisdictional basis. ERISA section 502A3 allows certain enumerated parties to bring an action for appropriate equitable relief. Not money damages. Appropriate equitable relief. And when you have a situation where you have a declaratory judgment action, to determine whether or not there is in fact subject matter jurisdiction, this court in the Jenkins case said you flip the parties around and you look to see whether or not the subject, the declaratory judgment defendant, in this case my client, could have, acting as a plaintiff, brought an action against the declaratory judgment plaintiff, in this case the local 38 trustees, for the relief that we were seeking. Could we sue under ERISA to collect our money damages? The answer is no. ERISA allows certain parties to do certain things. We are fiduciaries, so therefore you have to look under section 502A of ERISA to see what causes of action can an ERISA fiduciary bring. Two. It can bring one for a breach of fiduciary duty against another fiduciary. Two, it can bring an action for appropriate equitable relief under the catch-all provisions of 502A3, and this court in the Wise decision made it quite clear that that does not include money damages. So let's talk about 502A2 very quickly. In 502A2, I'm allowed to sue another fiduciary of my plan if I think that fiduciary has breached its fiduciary duty to my participants and beneficiaries. For someone to be a fiduciary of my plan, they must have discretion over my plan assets. The local 38 trustees never had discretion over my plan assets because they never held my plan assets. The money that was owed my plan does not become my plan's asset until such time as it comes into my hands. This court ruled that in the Boss decision where it clearly said that money out there in the hands of somebody else is not a plan asset. So the person who's dealing with that money is not a plan fiduciary. So that money that was owed us, those money damages that we were seeking, was never an asset of the Plumbers and Pipefitters National Pension Fund. Therefore, the local 38 trustees could not have been a fiduciary of the local 38 pension plan. I'm sorry, of the Plumbers and Pipefitters National Pension Plan. Therefore, we could not have used 502A2 in a coercive way to try and collect our money damages. The district court, Your Honor, ruled on the basis of the FAA. The district court determined, as we were having our oral argument in front of the court, it became crystal clear to the district court what exactly it was that it was being asked to do. It was being asked to interfere mid-arbitration. It was being asked to give an advisory opinion to the arbitrator as to what body of law had to be applied to resolve this underlying dispute over money damages. And the district court, as it heard what was being talked about, said, wait a minute, I can't do that. And this court, in the Sussex case and in the Aerojet case, made it quite clear that district court intervention and arbitration can occur at one of two stages, absent extraordinary circumstances, and I might add this court has never found extraordinary circumstances. You can do it at the beginning of the arbitration, when someone can come in and say, nope, there's no effective arbitration agreement here, and or the issues that are to be arbitrated don't fall under that agreement. You can do it at the end, when the arbitration is completed, and I don't like the result, and I can come in here and try and ask the court to vacate the arbitration award, which is the other issue which is in front of this court, which the court said they didn't want your argument on. And the court in Sussex refers to these as the bookends. And it's an apt description. Beginning, end. Can't do it in the middle. Well, the district court, from your perspective, never got to the point that you raised earlier, which is that you can't get money damages under 502A3. That is correct, Your Honor. The district court never reached our argument as the subject matter jurisdiction, but Your Honor's going to... And the district court, I gather, also felt that the language of the agreement, that anything arising from the agreement was sufficiently broad to confer all of the legal questions, including the arresting question, upon the arbitrator. Absolutely, Your Honor. The district court determined that the reciprocity agreement's arbitration provisions encompassed the entire dispute, and that included the decision of what law had to be applied. And the district court found that the arbitrator was empowered to make that decision, and she sent it back. Suppose we disagree with you on that issue. What about mootness? Your Honor, this case is clearly moot. Mootness occurs when you can no longer get any relief. So you have to ask yourselves, why is it that the local 38 Fund wanted to have ERISA apply to this case? And they told us three reasons. One, they wanted to apply a statute of limitations, even though the reciprocity agreement contains no statute of limitations. Two, they wanted to argue that my client had unclean hands, and therefore that should somehow preclude our claim. And three, this whole discussion about the PPA, which Mr. Pollard talked about, which is not before this court in this issue, in this case, other than in the mootness question, is before the court on the other case that you are looking at in terms of confirming the arbitration award. Turning back to the first point, limitations. The arbitrator said, even if there is a statute of limitations here, I find that it was equitably told. There goes limitations. With regard to unclean hands, he says, no, if you say they have unclean hands, I say you have unclean hands, you both have unclean hands, neither of you can rely on that defense. That one's gone. And then we have this whole PPA business. Well, their issue with the PPA is that the arbitrator got it wrong. They don't like his conclusion. He looked at the various cases that were out there on this issue. He heard my argument, he heard their argument, and he accepted my position. Their concern is not over application. Their concern is result. They don't like the result. Yes, Your Honor, I believe that's what this is. And we've briefed that issue on why there isn't a manifest disregard of the law, because there's no established law, and you've got to have established law to have a manifest disregard of the law. But their concern is, again, with the result, not the process. They disagree with the arbitrator's determination about the limitations period. They say that the arbitrator got it wrong when he said that there was equitable tolling. Whether the arbitrator got it right or wrong is not an issue for, is not a basis to vacate the arbitration award. They say he got it wrong on unclean hands. Again, whether he got it right or wrong is not a basis to set aside the arbitration award. When that arbitrator ruled in the comprehensive manner in which he did, in which he took every issue that they put before him, whether they did it under protest or not, they put every issue in front of him, and he adjudicated every issue. This became moot. This part of this process became moot. Because if you reverse and it goes back to the district court, what can the district court do? Order the arbitrator to do the same thing the arbitrator's already done. And that, Your Honor, and for that reason, and I hope I've addressed your questions here. My time is rapidly running out. The district court got it right. This court should not reverse this. We should move on. Thank you, counsel. Your time has expired. Thank you very much. Mr. Pollard, do you have some reserve time? Yes, I do, Your Honor. Thank you. Judge O'Scann, in response to your question about mootness, mootness occurs when you're deprived of the fruits of your appeal. We've been deprived of the fruits of our appeal because what we, what the parties agreed to was a federal court applying de novo review to the ERISA preemption question. All we hear now, all that's left is you'd get a manifest disregard, which is not de novo review. It's highly deferential. We wanted a district court to address the ERISA preemption issue on the merits of the first instance. So what can the district court do at this point? Well, you can remand to the district court to decide the subject matter jurisdiction issue. I think, okay, then what? And over in case 16, I guess you'd vacate that because the court is going to assert jurisdiction here. And so this becomes the preemption issue. Ruling the court decides it. And, by the way, both parties have interest in these assets. They're planned assets of both funds. We hold them for 45 days. If we remit too many, our people sue us. If we remit too few, they sue us. We can recoup them from them in a 502A3 action. There is a risk jurisdiction here. And this is a vehicle that where there are two funds with an interest in this money, which both of these funds have, this is a perfectly appropriate ERISA vehicle to sue under. Unless the court has any other questions, I'll conclude. Thank you very much, Counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Gould, M. Smith